**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Antoinne Jolly, | No. CV-16-00174-TUC-EJM |
| Petitioner, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

Petitioner Antoinne Jolly filed his pro se petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his convictions for two counts of sexual assault. (Doc. 1). Petitioner raises four grounds for relief: 1) ineffective assistance of counsel ("IAC"); 2) due process violations; 3) fundamental error by the trial court; and 4) prosecutorial misconduct.[1] Respondents filed an Answer contending that all of Petitioner's claims are either procedurally barred, not cognizable on habeas review, or without merit. (Doc. 13).

The Court finds that Ground One, Ground Four, and subclaims a, b, d, and e of Ground Two are technically exhausted and procedurally defaulted and thus not properly before this Court for review. The Court further finds that Petitioner does not demonstrate cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default of his claims. As to subclaim c of Ground Two, the Court finds that this claim is

---

[1] Each of these grounds contains a number of sub issues, which are discussed in more detail in Section III below.

properly exhausted and not procedurally defaulted, but that Petitioner has failed to show that the state court's decision was contrary to federal law, based on an unreasonable application of such law, or based on an unreasonable determination of the facts. Finally, the Court finds that Petitioner's claims in Ground Three are not cognizable on habeas review. Accordingly, the petition will be denied.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Trial, Sentencing, and Appeal

A Pima County Superior Court jury found Petitioner guilty of two counts of sexual assault. (Ex. B). Petitioner was sentenced to two consecutive prison terms totaling 10.5 years. *Id.* The Arizona COA summarized the facts of the case as follows:

> On New Year's Eve in 2011, the victim, S., and her husband had "a few drinks" and took "Percocets" before going to a friend's house and having more to drink. They then went to a bar, where S. drank "heavily." The two left the bar after midnight and got into an argument while waiting for a cab. S.'s husband told her to wait there for the cab and he began walking home.
>
> Jolly and his fiancée, G., were walking through the parking lot after leaving a nearby bar and saw S. crying. Jolly told G. they should take S. home, and S. got in their car. It was apparent to G. that S. was "clearly out of it" and "[ i ]ntoxicated." As Jolly drove, G. asked S. for her address, but S. was "completely drunk," falling against the front seat, and could not provide more than a two-digit number and "southwest" before she "just went out." Jolly and G. took her to their apartment, where she laid down on a futon in the living room and began to fall asleep. When G. went to the bedroom, Jolly told her he was going to stay up to play a video game and then come to bed. G. woke up a couple hours later, came out of the bedroom, and saw Jolly on the futon "leaning over" S. "very close to her face" and "rubbing her shoulders." S. had her face in a pillow and was crying. Jolly told G. that S. had a panic attack and he was "just trying to comfort her." He told G. to go back to bed, which she did. Later, G. woke up to a "kissing" and "sucking sound." When she walked into the living room, she saw S. "laying down but leaning into [ Jolly's] lap" and performing oral sex. Jolly looked up and said "Oh, that was wrong." G. told S. to leave and S. "scrambled up and took off."
>
> S. "woke up vomiting" in a laundry room in the apartment complex. She did not know where she was or

- 2 -

how she had gotten there, but had a vague recollection of waking up earlier to "somebody having sex with [her]." She was missing her underwear and shoes. She searched for the string of the tampon she had been wearing but "didn't feel it" and "freaked out." Her vagina "felt sore." She crouched under a stairway until the sun came up, found someone with a phone, and called her husband to pick her up. When he arrived, she told him she "needed to go to the hospital." A medical examination revealed genital tears and swelling, "consistent with penetration or blunt-force trauma" within the preceding twenty-four hours. Her tampon was "tucked in a fold," "really tight" against her cervix, which likely caused the pelvic pain S. reported. DNA matching Jolly's profile was found on both of S.'s breasts.

(Ex. E ¶¶ 2–4).

Following his conviction, Petitioner sought relief in the Arizona COA. Appointed counsel filed a brief presenting three issues for review: 1) insufficient evidence to support the crime of sexual assault when the State's theory was that the victim lacked the capacity to consent, but there was insufficient evidence of her lack of consent and no evidence that Petitioner knew of her lack of consent; 2) the trial court erroneously instructed the jury on the elements of sexual assault by excluding the element that Petitioner knew the sex was without consent, and by including a definition of "without consent" that relieved the State of its burden to prove that the victim did not consent; and 3) Petitioner's sentences should be concurrent under the state statute. (Ex. D).

On April 14, 2014, the COA found no reversible error and affirmed Petitioner's conviction and sentences. (Ex. E). Petitioner filed a petition for review with the Arizona Supreme Court, which the court denied on December 2, 2014. (Ex. F).

**B. Petition for Post-Conviction Relief**

On January 28, 2015 Petitioner initiated proceedings in Pima County Superior Court for post-conviction relief ("PCR"). (Ex. H). Appointed counsel filed a notice stating that he was unable to find any claims for relief to raise in a Rule 32 petition, and requested additional time for Petitioner to file a pro se petition. (Ex. K). Petitioner filed a pro se petition and presented six issues for review: 1) IAC based on counsel's failure to

object to preclusion of relevant evidence, allowing inclusion of prejudicial evidence, and lack of diligence and continuous communication with Petitioner; 2) abuse of discretion by the trial court for precluding evidence of Petitioner's military service and PTSD and denying him a defense and due process; 3) State's failure to introduce evidence that Petitioner used threats, force, or supplied drugs or drinks to the victim, thereby negating Petitioner's intent; 4) IAC where counsel failed to present facts that the victim never identified Petitioner in a lineup and told police she was assaulted by three Hispanics; 5) abuse of discretion by the trial court for denying Petitioner's Rule 20 motion for a directed verdict because there was a lack of evidence showing Petitioner's guilt; and 6) the trial court erred in not instructing the jury on intent as stated in the RAJI. (Ex. M).

The trial court denied PCR on May 3, 2016. (Ex. N). Petitioner did not file a petition for review with the Arizona COA.

## C. Habeas Petition

Petitioner filed his PWHC in this Court on March 18, 2016, asserting four grounds for relief. (Doc. 1). Petitioner requests that the Court overturn his convictions and vacate the case.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits the federal court's power to grant a petition for a writ of habeas corpus on behalf of a state prisoner. First, the federal court may only consider petitions alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Sections 2254(b) and (c) provide that the federal courts may not grant habeas corpus relief, with some exceptions, unless the petitioner exhausted state remedies. Additionally, if the petition includes a claim that was adjudicated on the merits in state court proceedings, federal court review is limited by section 2254(d).

## A. Exhaustion

A state prisoner must exhaust his state remedies before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); *O'Sullivan v. Boerckel*, 526

U.S. 838, 842 (1999). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by fairly presenting them to the state's highest court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary opportunity, the prisoner must fairly present her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). In Arizona, unless a prisoner has been sentenced to death, the highest court requirement is satisfied if the petitioner has presented his federal claim to the Arizona COA, either through the direct appeal process or post-conviction proceedings. *Crowell v. Knowles*, 483 F.Supp.2d 925, 931–33 (D. Ariz. 2007).

A claim is fairly presented if the petitioner describes both the operative facts and the federal legal theory upon which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007). The petitioner must have "characterized the claims he raised in state proceedings *specifically* as federal claims." *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000) (emphasis in original), *opinion amended and superseded*, 247 F.3d 904 (9th Cir. 2001). "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). "Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Hivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

However, "[a] habeas petitioner who [fails to properly exhaust] his federal claims in state court meets the technical requirements for exhaustion" if there are no state remedies still available to the petitioner. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). "This is often referred to as 'technical' exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy." *Thomas v. Schriro*, 2009 WL 775417, *4 (D. Ariz. March 23, 2009). "If no state remedies are currently available, a claim is technically exhausted," but, as discussed

below, the claim is procedurally defaulted and is only subject to federal habeas review in a narrow set of circumstances. *Garcia v. Ryan*, 2013 WL 4714370, *8 (D. Ariz. Aug. 29, 2013).

**B. Procedural Default**

If a petitioner fails to fairly present his claim to the state courts in a procedurally appropriate manner, the claim is procedurally defaulted and generally barred from federal habeas review. *Ylst v. Nunnemaker*, 501 U.S. 797, 802–05 (1991). There are two categories of procedural default. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729–30. Second, the claim may be procedurally defaulted if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n. 1; *O'Sullivan*, 526 U.S. at 848 (when time for filing state court petition has expired, petitioner's failure to timely present claims to state court results in a procedural default of those claims); *Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007) (failure to exhaust claims in state court resulted in procedural default of claims for federal habeas purposes when state's rules for filing petition for post-conviction relief barred petitioner from returning to state court to exhaust his claims).

When a petitioner has procedurally defaulted his claims, federal habeas review occurs only in limited circumstances. "A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (internal quotations and citation omitted); *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."). Cause requires a showing "that some objective factor external to the defense impeded counsel's efforts to comply with the

State's procedural rule . . . [such as] a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials made compliance impracticable." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal quotations and citations omitted). Prejudice requires "showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). The Court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir. 1991). Additionally, a habeas petitioner "may also qualify for relief from his procedural default if he can show that the procedural default would result in a 'fundamental miscarriage of justice.'" *Cook v. Schriro*, 538 F.3d 1000, 1028 (9th Cir. 2008) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This exception to the procedural default rule is limited to habeas petitioners who can establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327; *see also Murray*, 477 U.S. at 496; *Cook*, 538 F.3d at 1028.

### C. Adjudication on the Merits and § 2254(d)

The Ninth Circuit has held that "a state has 'adjudicated' a petitioner's constitutional claim 'on the merits' for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits." *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004).

If a habeas petition includes a claim that was properly exhausted, has not been procedurally defaulted, and was "adjudicated on the merits in State court proceedings," federal court review is limited by § 2254(d). Under § 2254(d)(1), a federal court cannot grant habeas relief unless the petitioner shows: (1) that the state court's decision was

contrary to federal law as clearly established in the holdings of the United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, 565 U.S. 34, 38 (2011); (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" in light of the record before the state court, 28 U.S.C. § 2254(d)(2); *Harrington v. Richter*, 562 U.S. 86 (2011). This standard is "difficult to meet." *Richter*, 562 U.S. at 102. It is also a "highly deferential standard for evaluating state court rulings . . . which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotations and citation omitted).

## III. ANALYSIS

### A. Ground One

In Ground One, Petitioner alleges that trial counsel was ineffective for the following reasons: a) pursuing a different line of defense than the one discussed with Petitioner; b) neglecting to do a full investigation of mitigating evidence before sentencing; c) pursuing a viable strategy at the expense of another strategy; d) failing to object to a detective's prejudicial testimony; e) failing to press the issue that the victim admitted to officers that she was self-medicated and had memory loss; f) failing to press the issue that the victim was unable to identify Petitioner in a photo lineup; g) failing to investigate possible defenses; h) failing to prepare for sentencing; i) failing to discover and present mitigating evidence; j) failing to present expert testimony on the victim's drug use; and k) failing to investigate any witnesses before trial. The Court finds that Petitioner failed to properly exhaust his claims in Ground One because he failed to present them to the Arizona COA

In Arizona, exhaustion is satisfied if a petitioner presents the federal basis of his claims to the COA through either the direct appeal process or PCR proceedings. While Petitioner raised several IAC claims in his Rule 32 petition, he never filed a petition for review with the Arizona COA. Further, even if Petitioner had properly exhausted the IAC claims in his Rule 32 petition by presenting them to the COA, asserting an IAC claim

"based on one set of facts [presented to the state courts], does not exhaust other claims of ineffective assistance of counsel based on different facts" that were not presented to the state courts. *Date v. Schriro,* 619 F. Supp. 2d 736, 788 (D. Ariz. 2008); *see also Moormann v. Schriro*, 426 F.3d 1044, 1056–57 (9th Cir. 2005) (new allegations of IAC not previously raised before the state court cannot be addressed on habeas review).

Claims not previously presented to the state courts on either direct appeal or collateral review are generally barred from federal review because any attempt to return to state court to present them would be futile unless the claims fit into a narrow range of exceptions. *See* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a) (precluding claims not raised on direct appeal or in prior post-conviction relief petitions), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Because these rules have been found to be consistently and regularly followed, and because they are independent of federal law, either their specific application to a claim by an Arizona court, or their operation to preclude a return to state court to exhaust a claim, will procedurally bar subsequent review of the merits of such a claim by a federal habeas court. *Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ortiz v. Stewart*, 149 F.3d 923, 931–32 (9th Cir. 1998) (Rule 32 is strictly followed); *State v. Mata*, 916 P.2d 1035, 1050–52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

Arizona Rules of Criminal Procedure regarding timeliness and preclusion prevent Petitioner from now exhausting his claims in Ground One in state court. Accordingly, the claims are both technically exhausted and procedurally defaulted and thus not properly before this Court for review. *See Crowell*, 483 F.Supp.2d at 931–33; *Coleman*, 501 U.S. at 732, 735 n. 1; *Garcia*, 2013 WL 4714370 at * 8.

A federal court may not consider the merits of a procedurally defaulted claim unless the petitioner can demonstrate cause for his noncompliance and actual prejudice, or establish that a miscarriage of justice would result from the lack of review. *See Schlup*, 513 U.S. at 321. Petitioner does not allege cause for, or prejudice arising from, his procedural default of the claim, and the Court can glean none from the record before it.

*See Martinez*, 132 S. Ct. at 1316; *Murray*, 477 U.S. at 488. Accordingly, relief on the merits of Ground One is precluded.

**B. Ground Two**

In Ground Two, Petitioner claims that his due process rights were violated when: a) the police allowed the victim to see other photos of Petitioner after she was unable to identify him in a lineup and insisted she take a closer look at Petitioner's photo; b) the county attorney failed to present accurate facts to the grand jury; c) the State failed to establish all elements of the crime beyond a reasonable doubt; d) Petitioner did not receive a fair trial; and e) his sentences should be concurrent. The Court finds that only subclaim c was properly presented to the state courts.

       i.    Unexhausted Claims

As to subclaim a, Petitioner did not challenge the lineup in his direct appeal. In his Rule 32 petition, Petitioner did present a claim for IAC based on counsel's alleged failure to present facts that the victim never identified Petitioner in a lineup. However, Petitioner did not present a separate claim apart from the IAC claim stating a due process challenge to the lineup procedure. Accordingly, subclaim a was not properly presented to the state courts.

As to subclaim b, Petitioner did not raise any challenges regarding the grand jury proceedings in either his direct appeal or his Rule 32 petition. Accordingly, subclaim b was not properly presented to the state courts. Likewise, subclaim d is also unexhausted because Petitioner never presented a due process claim to the state courts that he did not receive a fair trial. Further, the broad and conclusory allegation presented in subclaim d does not adequately present a cognizable claim for habeas relief and should be summarily dismissed. *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (a petitioner's conclusory suggestion that a constitutional right has been violated falls "far short of stating a valid claim of constitutional violation").

In subclaim e, Petitioner states that his sentences should be concurrent. In his direct appeal, Petitioner argued that under the applicable Arizona state statutes, his

sentences should be run concurrently. However, Petitioner did not present this as a federal, constitutional claim. *See Date v. Schriro*, 619 F.Supp.2d 736, 764–65 (D. Ariz. 2008) (In order to fairly present and properly exhaust his claims, "a petitioner [must] describe both the operative facts and the federal legal theory to the state courts. It is not enough that all of the facts necessary to support the federal claim were before the state court or that a 'somewhat similar' state law claim was raised." (quoting *Reese*, 541 U.S. at 28)). Furthermore, the COA found that Petitioner waived the claim and therefore declined to address it. Thus, subclaim e is unexhausted and the Court is precluded from addressing the merits because the state court applied an express procedural bar.

Arizona Rules of Criminal Procedure regarding timeliness and preclusion prevent Petitioner from now exhausting these claims in state court. Accordingly, the claims are both technically exhausted and procedurally defaulted and thus not properly before this Court for review. *See Crowell*, 483 F.Supp.2d at 931–33; *Coleman*, 501 U.S. at 732, 735 n. 1; *Garcia*, 2013 WL 4714370 at * 8. Petitioner does not allege cause for, or prejudice arising from, his procedural default of these claims, and the Court can glean none from the record before it. *See Martinez*, 132 S. Ct. at 1316; *Murray*, 477 U.S. at 488. Accordingly, the Court finds that subclaims a, b, d, and e are technically exhausted and procedurally defaulted, and that Petitioner has failed to show cause and prejudice for the default. Habeas relief on the merits of these claims is therefore precluded.

ii.    Exhausted Claim

In subclaim c, Petitioner alleges that his due process rights were violated when the State failed to establish all elements of the crime beyond a reasonable doubt. Respondents concede that this claim is properly exhausted.

Petitioner's sufficiency of the evidence claim is governed by the Supreme Court's holding in *Jackson v. Virginia* that "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. 307, 324 (1979). "[T]he

relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. This standard does not permit the federal habeas court to make its own de novo determination of guilt or innocence; rather, it gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to the ultimate fact. *Herrera v. Collins*, 506 U.S. 390, 401–02 (1993). As the Ninth Circuit has explained, "[t]he question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991) (citing *Jackson*, 443 U.S. at 326).

This Court presumes that the state court properly applied the law, *see, e.g.*, *Holland v. Jackson*, 542 U.S. 649, 655 (2004); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (state court decisions must "be given the benefit of the doubt"), and gives deference to the trier of fact, *Wright v. West*, 505 U.S. 277, 296 (1992); *Sumner v. Mata*, 455 U.S. 591 (1982). "[A] determination of a factual issue made by a State court shall be presumed to be correct[,]" and it is Petitioner's burden to rebut this presumption with clear and convincing evidence. 28 U.S.C.A. § 2254 (e)(1). Further,

> Because the [AEDPA] applies to this petition, we owe a double dose of deference to the state court's judgment. To grant habeas relief, we therefore must also conclude that the state court's determination that a rational jury could have found that there was sufficient evidence of guilt, i.e., that each required element was proven beyond a reasonable doubt, was objectively unreasonable.

*Gonzales v. Gipson*, 2017 WL 2839637, *1 (9th Cir. July 3, 2017) (internal quotations and citations omitted).

"[T]he government's evidence need not exclude every reasonable hypothesis consistent with innocence," *United States v. Talbert*, 710 F.2d 528, 530 (9th Cir. 1983) (per curiam), and "[t]he relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991). Even where evidence is

"almost entirely circumstantial and relatively weak," it may be sufficient to support a conviction. *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000); *see also Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) ("Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."); *United States v. Johnson*, 804 F.2d 1078, 1083 (9th Cir. 1986) (the government is entitled to all reasonable inferences that may be drawn from the evidence).

On direct appeal, Petitioner raised a due process challenge that the State failed to establish all elements of the crime beyond a reasonable doubt. Petitioner argued that there was insufficient evidence to support the crime of sexual assault when the State's theory was that the victim lacked the capacity to consent, but there was insufficient evidence of her lack of consent and no evidence that Petitioner knew of her lack of consent. Petitioner further stated that there was no evidence of the victim's involuntariness and no evidence of any threats or use of force by Petitioner to force the victim to perform oral sex. Petitioner contended that it was therefore impossible for any rational trier of fact to find that the State proved no consent by impairment beyond a reasonable doubt.

In affirming Petitioner's convictions, the COA found that there was substantial evidence in the record showing that the State proved both elements—that the victim was incapable of consent and that Petitioner knew or should have known that she was incapable of consent. The court pointed to the following:

> Before leaving her house, S. had "a few drinks," and took a Percocet for "recreational drug use." She also took "propranolol" to treat "[r]apid heart rate." She then had another drink at a friend's house and drank "heavily" at the bar. By the time she met Jolly and G., she felt "intoxicated" and "drunk." She did not recall getting into Jolly's car. When G. asked S. for her address, S. "toppled over and hit her head on the front seat." G. testified it was "just a complete fall-out" and that S. did not "put her hands up" to break her fall, but fell face-first into the seat. At that point, G. knew S. "was completely drunk." When G. asked again for her address, S. gave "a two-digit number," said "southwest," and then "just went out." G. told Jolly, "we need to get rid of her somehow, because I don't want to be liable if there's something ·else that she took." G. was scared about what S. may have ingested and told Jolly about her concerns, but Jolly suggested they take her to their apartment.

Once they arrived at the apartment, Jolly offered to carry S. up the stairs. S. ultimately walked up the stairs, but she "needed help" and was "leaning on" Jolly, who "had his hand around her back." S. felt like she "was having a dream," and recalled "crying and saying, I want to go home, I want to go home." She remembered coming "to consciousness again, and somebody was having sex with [her]." Her next recollection was when she "woke up vomiting . . . in a laundry room."

[3] A urine analysis confirmed that S. had three drugs—doxylamine, oxymorphone, and oxycodone—in her system, which can cause "drowsiness, dizziness, confusion, lack of concentration, sedation, and memory problems" and should not be used in combination with alcohol.

(Ex. E ¶¶ 18–19). The court noted that while Petitioner pointed to evidence such as testimony from the victim's husband that she was in control for the most part when he left her in the parking lot, that the victim was able to get up the stairs to the apartment without being carried, and that there was no evidence that the oral sex involved a struggle, force, or an unconscious victim, the court would not re-weigh the evidence and the jury was entitled to weigh the evidence and resolve any conflicts. *Id.* at ¶¶ 20–21.

On federal habeas review, Petitioner bears the burden of showing that either the state court's decision was contrary to controlling United States Supreme Court law, that it involved an unreasonable application of such law, or that it was based on an unreasonable determination of the facts. Petitioner has failed to meet that burden here. This Court's review of the record reveals ample evidence to support the COA's determination that, based on the record before it, there was substantial evidence showing that the State met its burden to prove that the victim was incapable of consent and that Petitioner either knew or should have reasonably known that she could not consent.[2] "Federal courts are

[2] For example, testimony at trial showed that: Before going out, the victim had a few glasses of wine, a Percocet, Propranolol, and some beer at a friend's house. (Doc. 16 at 8–10). At the bar, she had shots and was "drinking heavily." *Id.* at 14. She felt drunk when she left the bar. *Id.* at 16. Her memory of Petitioner and his fiancée approaching her in the parking lot was blurry; she did not remember getting into their car but remembered being in it; she woke up briefly and wondered how she got there and then blacked out again. *Id.* at 19. She was confused and did not know where she was, who she was with, or how she got there. *Id.* at 20. She didn't remember going into the apartment and felt like she was having a dream; she was scared and crying. *Id.* at 22–23. She came to consciousness and someone was having sex with her; the next thing she remembered was waking up vomiting in a laundry room. *Id.* at 23–25. She vaguely remembered someone doing something to her head or putting something in her mouth, but it was hard for her to

not forums in which to relitigate state trials[,]" *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983), and "it is well settled that upon *habeas corpus* the court will not weigh the evidence." *Hyde v. Shine*, 199 U.S. 62, 84 (1905). Though Petitioner did present some conflicting evidence,[3] that evidence did not conclusively establish that Petitioner did not commit the crimes charged, and it is the province of the jury to resolve conflicts in the evidence. This Court cannot say that no rational juror would have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 324 (1979); *Roehler*, 945 F.2d at 306. Thus, it was not objectively unreasonable for the COA to determine that there was sufficient evidence for the jury to conclude beyond a reasonable doubt that Petitioner was guilty.

Accordingly, because Petitioner has failed to show that the COA's decision on subclaim c was contrary to clearly established law or based on an unreasonable

---

separate reality that night. *Id.* at 26.

The victim had been wearing a tampon that night, but the next morning she could not locate it, and the nurse had to extract it from her cervix. (Doc. 16 at 45–46). The location and condition of the victim's tampon was consistent with being pushed up by a penis, finger, or object. (Doc. 17 at 55). The nurse documented injuries to the genital area including small tears, redness, and swelling, and while she could not date the injuries, they were consistent with penetration or blunt force trauma. (Doc. 17 at 44). It's possible they could have been from consensual sex with the victim's husband two days prior, but based on the redness and swelling she wouldn't expect them to be. *Id.* at 73.

Petitioner's fiancée G. testified that the victim was unable to give her address in the car and that she fell over and "was clearly out of it." (Doc. 18 at 43). She hit her head on the front seat and didn't put her hands up to stop herself, it was "a complete fall out" and she was "completely drunk" and "blacked out" and wasn't coherent. *Id.* at 46–48. The first time G. woke up, she saw the victim laying down and Petitioner was very close to her face, rubbing her shoulders and talking to her, and the victim was crying. *Id.* at 58. G. stated that when they argued, Petitioner would get right in her ear and say threatening things and was very persuasive. (Doc. 19 at 7).

While the victim's husband testified that she repeatedly told him to leave her alone, the victim had no memory of saying this and didn't remember him leaving. (Doc. 15 at 90; Doc. 16 at 18). When he picked her up the next morning, she was missing her shoes, jacket, panties, and purse. (Doc. 15 at 95). She was crying and looked like she was in her own world, and seemed numb and far way. *Id.* at 95, 99.

[3] For example, in his brief on direct appeal Petitioner noted that: there was no evidence that there was any force or threat of force used to make the victim engage in sexual acts; the genital injuries could have been from the victim inserting her own tampon or having sex with her husband; G. testified that she did not see Petitioner forcing the victim to perform oral sex on him; the victim's husband thought she was in control and not that messed up when they left the bar; the victim walked up the stairs without being carried; the victim engaged in conversation with G. about pajamas, pizza, and a blanket; and the victim told G. she was fine. (Ex. D).

application of that law or an unreasonable determination of the facts, the Court will deny relief on this claim. As noted above, the remainder of Petitioner's subclaims in Ground Two are unexhausted and procedurally defaulted. Habeas relief on the merits of Ground Two is therefore precluded.

**C. Ground Three**

In Ground Three, Petitioner alleges that the trial court committed fundamental error when it erroneously instructed the jury on the essential elements of the crime, and that the trial court showed bias against Petitioner by allowing the jury to be instructed this way. The Court finds that this claim is not cognizable on habeas review because it is based on a state court's determination of a state law issue.

Here, Petitioner argued on direct appeal that the trial court erroneously instructed the jury on the elements of the crime by excluding the element that Petitioner knew the sex was without consent, and by including a definition of "without consent" that relieved the State of its burden to prove that the victim did not consent. Petitioner stated that sexual assault has three elements, and that the court instructed the jury on the first two elements but then presented the third element, "without consent," in the form of a definition, and that this third element was therefore not clearly presented as an essential element of the crime charged. Petitioner further alleged that the jury instructions given by the trial court were inconsistent with the RAJI.[4] While Petitioner did cite to some federal case law and referenced his due process rights, Petitioner's arguments were based on Arizona state statutes, state case law, and the RAJI. The COA addressed Petitioner's jury instruction claim by analyzing Arizona state statutes and case law, and concluded that pursuant to state law, the State was required to prove that the Petitioner knew or should have reasonably known of the victim's lack of consent. The court therefore rejected Petitioner's argument that the State was required to prove that he had actual knowledge

---

[4] In addition, in the Rule 32 petition, Petitioner again argued that the trial court erred in failing to instruct the jury on intent as stated in the RAJI. However, Petitioner did not present this as a federal, constitutional claim. The trial court found the claim waived and precluded and did not address the merits. And, because Petitioner did not appeal the trial court's denial of the Rule 32 petition to the COA, the claim is also unexhausted.

of the victim's lack of consent. The COA also noted that the RAJI are not law and not approved by the Arizona Supreme Court, and in any event the instructions given here were not inconsistent with the RAJI.

Petitioner's instructional error claims are not cognizable grounds for federal habeas relief because whether the trial court adequately instructed the jury on the applicable state law is not a question of federal law. *See Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("instructions that contain errors of state law may not form the basis for federal habeas relief"); *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988) (instructional error "does not alone raise a ground cognizable in a federal habeas corpus proceeding"). And, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("federal habeas corpus relief does not lie for errors of state law"). Petitioner also cannot transform his state law claims into federal ones merely by asserting a violation of due process. *See Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999); *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). Thus, because the Arizona COA affirmed the trial court's instructions as given, the state court's interpretation of state law is binding on this Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Accordingly, this claim it is not cognizable in federal habeas proceedings.

### D. Ground Four

In Ground Four, Petitioner alleges prosecutorial misconduct and states that he has demonstrated evidence showing discriminatory intent; however, Petitioner does not specify what this evidence is. Petitioner further argues that the State's definition of "without consent" is that Petitioner should have known that the victim was incapable of consenting, but that the State must prove that Petitioner knowingly and intelligently engaged in sexual conduct with the victim and that he knew it was without consent.

Petitioner did not make any claims of prosecutorial misconduct in either his direct

appeal or his Rule 32 petition.[5] Accordingly, this claim was not properly presented to the state courts and is unexhausted. Further, to the extent that Petitioner challenges the sufficiency of the evidence regarding the victim's capacity to consent, the Court has already addressed the merits of this claim in Ground Two above.

Arizona Rules of Criminal Procedure regarding timeliness and preclusion prevent Petitioner from now exhausting Ground Four in state court. Accordingly, this claim is both technically exhausted and procedurally defaulted and thus not properly before this Court for review. *See Crowell*, 483 F.Supp.2d at 931–33; *Coleman*, 501 U.S. at 732, 735 n. 1; *Garcia*, 2013 WL 4714370 at * 8. Petitioner does not allege cause for, or prejudice arising from, his procedural default of the claim, and the Court can glean none from the record before it. *See Martinez*, 132 S. Ct. at 1316; *Murray*, 477 U.S. at 488. Accordingly, the Court finds that Petitioner's claims in Ground Four are technically exhausted and procedurally defaulted, and that Petitioner has failed to show cause and prejudice for the default. Habeas relief on the merits of this claim is therefore precluded.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 is denied and that this action is dismissed with prejudice. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that no certificate of appealability shall be issued and that Petitioner is not entitled to appeal in forma pauperis because dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the ruling debatable. Further, to the extent Petitioner's claims are rejected on the merits, reasonable jurists would not find the Court's assessment of the constitutional claims to be debatable or wrong.

---

[5] In his Rule 32 petition, Petitioner argued that the State failed to introduce evidence of threats or force, or Petitioner supplying drugs or alcohol to the victim, and that this therefore negated Petitioner's intent. However, this was not presented as a federal, constitutional violation or a prosecutorial misconduct claim, nor were the claims in the Rule 32 petition ever presented to the COA.

Dated this 15th day of June, 2018.

Eric J. Markovich
United States Magistrate Judge